UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

ANTHONY W. HALE,
*on behalf of himself and on behalf
of all others similarly situated*,

      Plaintiff,

v.                                  CASE NO.: 3:22-cv-00048

LOWE'S COMPANIES, INC.,

      Defendant.

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Anthony W. Hale ("Plaintiff"), by and through undersigned Counsel, and on behalf of himself and all others similarly situated, brings the following Class Action as a matter of right against Defendant, Lowe's Companies, Inc. ("Defendant") under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. §§ 1681a–x, and in support of his claims states as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendant for violations of the FCRA in the employment context. The FCRA imposes several important requirements on employers that use a background checks as part of their hiring processes, which are designed to protect consumers like Plaintiff.

2. This is the second time Defendant has been sued for nearly identical violations of the FCRA, making its FCRA violations alleged herein particularly egregious and willful. *See Brown, et al. v. Lowe's Cos., Inc., et al.*, No. 5:13-cv-00079 (W.D.N.C.).

3. So while Defendant should know better about how it performs the simple duties the FCRA imposes upon it in the employment context, the settlement that resulted from *Brown*

apparently caused no substantive changes in the way in which Lowe's uses background checks in the employment context.

4. Defendant is a home-improvement retailer headquartered in Mooresville, North Carolina and doing business across the country including in Hillsborough County, Florida.

5. As part of its hiring processes, Defendant uses consumer reports (commonly known as background checks) to make employment decisions. Because such background checks are "consumer reports" under the FCRA and Defendant's employment decisions are based in whole or in part on the contents of the background checks, Defendant is obliged to adhere to certain requirements of the FCRA.

6. Defendant obtained the consumer reports at issue in this action from a non-party consumer reporting agency.

7. Obtaining and using consumer reports in any context is presumptively illegal. The FCRA provides the limited, and exclusive, statutory bases for possession and use of such report. These permissible purposes include, among other circumstances, employment.

8. When using criminal background reports for employment purposes, employers must, before declining, delaying, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA. 15 U.S.C. § 1681b(b)(3). This requirement is commonly known as pre-adverse-action notice.

9. Providing a copy of the criminal background report as well as a statement of consumer rights before making an adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports.

10. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision. Even where reports are accurate, the FCRA still demands that notice be given so applicants have an opportunity to address any derogatory information with employers before a hiring decision is made.

11. As set forth more fully below, Plaintiff was denied employment at Lowe's because of information in a background check but without Lowe's first providing him with a copy of the report on which that decision was based and an opportunity to dispute or discuss the information with Lowe's before Lowe's chose not to hire him.

12. This is the identical violation for which Lowe's settled nationwide class claims in *Brown*.

13. Plaintiff brings a class claim under 15 U.S.C. § 1681b(b)(3)(A) because, by taking adverse employment action based on undisclosed consumer report information against Plaintiff and other putative class members without first providing them with a copy of the pertinent consumer report and a summary of their rights, Defendant violated that Section of the FCRA.

## JURISDICTION AND VENUE

14. This Court's jurisdiction over Plaintiff's claims is conferred by 15 U.S.C. § 1681p.

15. Venue is proper in this Court because Defendant resides in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

16. Plaintiff is a "consumer" as protected and governed by the FCRA.

17. Defendant is an "employer" and "user" of consumer reports as defined by the FCRA.

18. Defendant used "consumer reports" for "employment purposes" as those terms are defined in the FCRA.

# FACTUAL ALLEGATIONS

## *Defendant's Systematic Violations of 15 U.S.C. § 1681b(b)(3)*

19. Defendant routinely takes adverse actions against applicants and employees, like Plaintiff, on the basis of information contained in background reports without first providing those individuals with a copy of the report and a summary of their rights. This conduct violates 15 U.S.C. § 1681b(b)(3).

20. Named Plaintiff Anthony Hale applied for a position with Defendant as a sales specialist in the flooring department of a Lowe's location in Hillsborough County, Florida, in early March of 2020.

21. Based on his experience and qualifications, Defendant offered Plaintiff the job, but the offer was made contingent on him passing a background check.

22. Plaintiff expected no trouble in passing the background check, as he has no significant criminal history.

23. Based upon Defendant's offer of employment, Plaintiff quit applying for other jobs.

24. Not only that, Plaintiff turned down a job offer from Home Depot based on the job offer from Defendant.

25. On or about April 10, 2020, Defendant informed Plaintiff via a text message sent by Katelyn Kasper as follows: "Hi Anthony. Unfortunately your background check did not pass. I don't know what goes into the decision so I can't give you specifics. But I really appreciate your time because I know it took forever. I wish you the best."

26. Plaintiff responded just a few minutes later, and asked if he would get a copy of his background check. Importantly, at that time, and contrary to 15 U.S.C. § 1681b(b)(3), neither

Defendant nor its consumer reporting agency provided to Plaintiff a copy of his consumer report or with a copy of the statement of his rights under the FCRA.

27. In blatant violation of 15 U.S.C. § 1681b(b)(3), Plaintiff was not provided with a copy of the consumer report in advance of the termination, nor was he provided with a copy of his rights under the FCRA.

28. Had Defendant bothered to provide Plaintiff with a copy of the consumer report and given him the chance to explain the contents of his report prior to taking adverse action against him, Defendant would have learned that, contrary to the information in the report generated on Plaintiff by Defendant's consumer reporting agency (First Advantage), Plaintiff has no felony convictions.

29. But Plaintiff was never given an opportunity to explain anything to Defendant prior to his abrupt termination.

30. Defendant's termination of Plaintiff's employment caused Plaintiff damages in the form of lost pay, and emotional damages due to stress caused by the loss of a job he should certainly have retained.

31. Furthermore, Defendant caused Plaintiff to suffer an informational injury by denying him of information in the form of a compliant pre-adverse action notice containing a copy of the consumer report at issue, and a copy of his rights under the FCRA, both of which he is plainly entitled under 15 U.S.C. § 1681b(b)(3). These same injuries are shared by all members of the putative Pre-Adverse Action class Plaintiff seeks to represent in this litigation.

32. Simply put, Defendant violated 15 U.S.C. § 1681b(b)(3)(A) because, before taking adverse action against Plaintiff, it did not provide him either with a copy of his consumer report or with the summary of rights required under 15 U.S.C. § 1681b(b)(3)(A).

33. In accordance with the FCRA's requirements, the consumer reporting agency from which Defendant acquired consumer reports during the two years preceding the filing of this Complaint required Defendant to certify that it would comply with the FCRA's pre-adverse action notice requirements if those requirements became applicable. *See* 15 U.S.C. § 1681b(b)(1).

34. Thus, Defendant ***knew*** that it had an obligation to provide current or prospective employees with copies of their reports and summaries of their rights prior to taking adverse action based in whole or in part on a consumer report.

35. Defendant further knew of these requirements because it was sued over just this conduct in *Brown*, yet it failed to correct the systemic problem of taking adverse actions against applicants without first providing the FCRA-mandated notice.

36. Because of this systemic problem, Defendant repeatedly failed to provide other applicants and employees with a copy of their reports and a description of their rights prior to terminating or denying their employment or making other decisions for employment purposes that adversely affected their current or prospective employment.

37. By systematically failing to provide Plaintiff and other employees and applicants with pre-adverse action notice, including a copy of the report and a summary of their rights, prior to taking adverse action against them, Defendant knowingly and willfully violated 15 U.S.C. § 1681b(b)(3).

38. Plaintiff and Pre-Adverse Action Class suffered a concrete informational injury arising from Defendant's failure to provide the pre-adverse action notice required by 15 U.S.C. § 1681b(b)(3). Pursuant to § 1681b(b)(3), Plaintiff was entitled to receive certain information at a specific time, namely a copy of his consumer report and a summary of his rights before Defendant made the decision to terminate his employment. Defendant was required to provide Plaintiff with

this information, and to give him a reasonable amount of time to explain any issues contained in his report (typically 5 days), before Defendant took an adverse action against him.

39. By depriving Plaintiff of all of this information, Defendant robbed Plaintiff of the ability to review the adverse information about him and explain to Defendant any mitigating factors. Such factors include that Plaintiff has no felony convictions, and First Advantage inaccurately reported that he did.

40. Consequently, Plaintiff was also deprived of the opportunity to explain to Defendant why their interpretation of his report did not warrant termination and/or a withdrawal of his employment offer.

41. Plaintiff and Pre-Adverse Action Class suffered an invasion of privacy as a result of Defendant using their private information in a manner which it was not entitled to use it pursuant to the law. 15 U.S.C. § 1681b(b)(3) contains restrictions on the circumstances in which a consumer report can be used as a basis for adverse employment action.

42. One of those conditions is that a report may only be used as a basis for adverse employment action when the consumer to whom the report relates has previously been provided with a copy of the report and a summary of the consumer's rights. Absent the fulfillment of these conditions, the employer is not allowed to rely on the private information contained in the report. By using Plaintiff's information in a manner not allowed by law, Defendant invaded his privacy.

43. Plaintiff also suffered actual damages because he experienced a job loss, and wage loss, as a result of Defendant's failure to provide pre-adverse action notice. Had Defendant given Plaintiff an opportunity to explain its erroneous interpretation of his report before it made the decision to terminate him, it is entirely possible Plaintiff would have been permitted to keep his job and, in turn, his wages.

44. Plaintiff also experienced emotional distress due to Defendant's failure to provide the required pre-adverse action notice and feelings of helplessness and humiliation due to his inability to explain why his report was inaccurate.

45. Due to Defendant's refusal to provide the statutorily-required pre-adverse action documentation (including a copy of his consumer report and a summary of his rights under the FCRA), Plaintiff suffered harm to his reputation because, before he was able to explain the information in his consumer report, Defendant made the decision to terminate his employment.

46. Plaintiff continues to suffer emotional distress due to fear Defendant will inform prospective or future employers that he was fired due to issues with his background.

47. Defendant's violations of Section 1681b(b)(3)'s requirements are systematic and purely by design. In employing First Advantage to provide it with background checks, Defendant also permits First Advantage to apply Defendant's hiring criteria to the results of those background checks.

48. In Plaintiff's case, for instance, First Advantage created a report that falsely showed Plaintiff with a felony conviction. Based on Defendant's hiring criteria, First Advantage graded Plaintiff as "Review in Progress" for employment at Lowe's.

49. This grading, or adjudication as it is often called, occurs without any genuine input or review by Defendant through the thousands of times per week it occurs.

50. Discovery will show that "Review in Progress" is a pseudonym for "ineligible for employment." When a person from Lowe's sees that adjudication result, he or she knows that any review will confirm that First Advantage believes the person to be ineligible for hire.

51. Defendant and First Advantage are so integrated regarding the use of background checks and adjudication by First Advantage that several First Advantage employees work at Defendant's headquarters and complete the adjudication process for Defendant.

52. The results of the adjudications are placed into Defendant's applicant-tracking system little, if any, genuine review by anyone at Lowe's.

53. For example, while someone at Lowe's may have viewed the grading of Plaintiff as Review in Progress by the First Advantage employee, no one at Lowe's does anything to verify any of the information that goes into a report by First Advantage, and likewise no one at Lowe's takes the time to ensure that any notice has been provided to the applicant before the adjudication result of ineligible makes its way into Defendant's applicant-tracking system.

54. The Review in Progress finding is no mere label. It is a decision that is almost instantly incorporated into Defendant's computerized applicant-tracking system, whereby anyone viewing Plaintiff's status can see that First Advantage has completed the background check and deemed him ineligible to be employed with Defendant.

55. Defendant's representatives, like Ms. Kasper, know that a finding of Review in Progress and entry of that finding in Defendant's applicant-tracking system means that person cannot be hired, and Defendant's representatives should consider the position open and they should continue to screen applicants for that position.

56. The provision of the FCRA notice to applicants that an adverse action may be taken against them is likewise automatic and perfunctory. When an applicant is adjudicated as Review in Progress and that notation is placed into Defendant's applicant-tracking system, it signals First Advantage's own computer system to key-up a letter on Lowe's letterhead to be sent to the applicant explaining that there is information on the applicant's background check that may result

in denial of employment; that First Advantage is the source of the report; that First Advantage plays no role in the decision (which of course is false, because First Advantage *made* the decision on behalf of Defendant); and that the person should contact First Advantage to dispute any inaccuracies.

57. The letter also includes a copy of the report and summary of the applicant's FCRA rights. But, since the adjudication of Review in Progress results in the denial of employment immediately upon the assignment of that grade by First Advantage, the letter is sent after the employment decision has been made.

58. Plaintiff's circumstances bear these facts out. First Advantage did a background check on him, and graded him as Review in Progress based on the results of that check. First Advantage's employee at Defendant's facility entered that result into Defendant's applicant-tracking system, and Ms. Kasper viewed it or the result was communicated to her.

59. Ms. Kasper knew that the adjudication result meant Plaintiff could not be hired, so she communicated that fact to Plaintiff by text message. As is Defendant's well-worn practice, no one at Defendant bothered to determine if Plaintiff had been provided the notice required by Section 1681b(b)(3) before Ms. Kasper told Plaintiff he would not be hired.

60. Based on the foregoing violations, Plaintiff asserts FCRA claims against Defendant on behalf of himself and the class of Defendant's employees, and prospective employees.

61. On behalf of himself and the Putative Class, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA.

10

Case 5:22-cv-00013-KDB-DSC   Document 1   Filed 02/03/22   Page 10 of 17

### *Defendant's Violations Were Willful*

62. The FCRA permits the recovery of statutory damages of between $100 and $1,000 for willful violations. 15 U.S.C. § 1681n(a). Plaintiff and the putative class may also recover uncapped punitive damages upon a finding of willfulness. *Id.*

63. Willfulness in the context embraces knowing violations and reckless ones as well.

64. Defendant has ample ability, pursuant to guidance by the statute itself, court decisions, and statements from the Federal Trade Commission, to bring its processes into compliance with Section 1681b(b)(3).

65. Yet, despite many years and plenty of authoritative guidance, Defendant has failed to bring its hiring process in line with the FCRA's easy-to-follow requirements.

66. Unlike perhaps many Defendants, this one is on heightened notice of Section 1681b(b)(3)'s requirements as a result of the *Brown* litigation. There, Defendant settled the class-action claims of thousands of individuals brought under Section 1681b(B)(3), so it is acutely aware of that Section's requirements and its internal failures to meet those requirements.

67. Yet, Defendant failed to bring its background-check process in line with the FCRA's requirements, providing a textbook example of conduct that the Defendant knows violates the statute.

68. At the very least, Defendant's conduct was reckless, as it knew perfectly well what those requirements were, yet fell short of them even after settling a lawsuit alleging that its process violated the statute.

### **CLASS ACTION REQUIREMENTS**

69. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff asserts his claim in Count I on behalf of a Putative Pre-Adverse Action Class defined as:

**All consumers in the United States who (1) were subject to a consumer report provided to Lowe's, (2) for whom, based in whole or in part on the information contained in those consumer reports, (3) there was entered into the Lowe's computer system a code with which a person was ineligible for hire or continued employment, and (4) for whom Lowe's did not provide the consumer with a copy of the consumer report and written summary of FCRA rights at least five business days before the code was entered in Lowe's system, (5) for the five years preceding the date of this action.**

70. <u>Numerosity</u>: The Putative Class is so numerous and geographically dispersed that joinder of all Class members is impracticable. Defendant regularly obtain and use information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action. Plaintiff is informed and believes that during the relevant time period, hundreds or thousands of Defendant's employees and prospective employees satisfy the definition of the Putative Class.

71. <u>Typicality</u>: Plaintiff's claims are typical of the members of the Putative Class. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

72. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Putative Class, and has retained counsel experienced in complex class action litigation.

73. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

   a) Whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

      b)       Whether Defendant's background check practices and/or procedures comply with the FCRA, including as to pre-adverse notice;

      c)       Whether Defendant's violations of the FCRA were willful;

      d)       The proper measure of statutory damages; and

      e)       The proper form of injunctive and declaratory relief.

74. This case is maintainable as a class action because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

75. This case is maintainable as a class action because Defendant has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

76. Class certification is also appropriate because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each Class Member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant'

practices. Since the claims in this case revolve around lack of notice and failure to certify certain things to Universal, Class Members are not likely to learn of their claims outside of litigation. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

### FIRST CLASS CLAIM FOR RELIEF
### Failure to Provide Copy of Consumer Report in Violation of
### 15 U.S.C. § 1681b(b)(3)(A)

77. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

78. Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Pre-Adverse Action Class.

79. Defendant violated the FCRA by failing to provide Plaintiff and other Pre-Adverse Action Class members with a copy of the consumer report that was used to take adverse employment action against them. 15 U.S.C. § 1681b(b)(3)(A).

80. The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Pre-Adverse Action Class Members under 15 U.S.C. § 1681b(b)(3)(A).

81. Defendant knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission, and under long-established case law. Defendant obtained or had available substantial written materials which apprised them of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

82. Defendant's willful conduct is also reflected by, among other things, the following facts:

a) Defendant is a national corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

b) Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance, and case law, interpreting the FCRA, as well as the plain language of the statute;

c) Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

d) In accordance with the FCRA's requirements, the consumer reporting agency from which Defendant acquired consumer reports during the two years preceding the filing of this Complaint required Defendant to certify that it would comply with the FCRA's pre-adverse action notice requirements if those requirements became applicable. *See* 15 U.S.C. § 1681b(b)(1);

e) The consumer reporting agency that provided Plaintiff's consumer report information to Defendant has published numerous FCRA-related articles and compliance self-help materials and provided them to Defendant, including as to pre-adverse notice; and, finally,

f) This is the second time Defendant has been sued for nearly identical violations of the FCRA, making its FCRA violations alleged herein particularly egregious and willful. *See Brown, et al. v. Lowe's Cos., Inc., et al.*, No. 5:13-cv-00079 (W.D.N.C.).

83. Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

84. Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

85. **WHEREFORE**, Plaintiff, on behalf of himself and the Putative Class, prays for relief as follows:

   a) Determining that this action may proceed as a class action under Rule 23(b)(1), and (2) and (3) of the Federal Rules of Civil Procedure;

   b) Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Class;

   c) Issuing proper notice to the Putative Class at Defendant's expense;

   d) Declaring that Defendant committed multiple, separate violations of the FCRA;

   e) Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

   f) Awarding statutory damages as provided by the FCRA, including punitive damages;

   g) Awarding reasonable attorneys' fees and costs as provided by the FCRA;

   h) Granting other and further relief, in law or equity, as this Court may

deem appropriate and just.

## DEMAND FOR JURY TRIAL

86. Plaintiff and the Putative Class demand a trial by jury.

DATED this 3rd day of February of 2022.

Respectfully submitted,

**SELLERS, AYERS, DORTCH & LYONS, PA**

By: /s/Brett Dressler (NC # 34516)
301 S. McDowell Street, Ste. 410
Charlotte, North Carolina 28204
Telephone: (704) 377-5050
Email: BDressler@sellersayers.com

and

**Leonard A. Bennett**
N.C. Bar No. 21576
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel. (757) 930-3660
Fax (757) 930-3662
Email: craig@clalegal.com

*Attorneys for Plaintiff*